**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of  Delaware
                                    (State)

Case number (*If known*): __23-_____ Chapter __11__

☐ Check if this is an
   amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

---

1. **Debtor's name**

   Agspring Idaho, LLC

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number** (EIN)

   3  6  –  4  7  7  8  7  5  4

4. **Debtor's address**

   **Principal place of business**

   5101 College Boulevard
   Number     Street

   _____

   Leawood            KS      66211
   City              State    ZIP Code

   Johnson
   County

   **Mailing address, if different from principal place of business**

   Number      Street

   P.O. Box

   City              State    ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number      Street

   City              State    ZIP Code

5. **Debtor's website** (URL)

---

Debtor   **Agspring Idaho, LLC** _____  Case number *(if known)* __23-__ _____
Name

| 6. | **Type of debtor** | [X] Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
|---|---|---|
| | | [ ] Partnership (excluding  LLP) |
| | | [ ] Other. Specify: _____ |

| 7. | **Describe debtor's business** | A. *Check one:* |
|---|---|---|

        [ ] Health Care Business (as defined in 11 U.S.C. § 101(27A))

        [ ] Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

        [ ] Railroad (as defined in 11 U.S.C. § 101(44))

        [ ] Stockbroker (as defined in 11 U.S.C. § 101(53A))

        [ ] Commodity Broker (as defined in 11 U.S.C. § 101(6))

        [ ] Clearing Bank (as defined in 11 U.S.C. § 781(3))

        [X] None of the above

B. *Check all that apply:*

        [ ] Tax-exempt entity (as described in 26 U.S.C. § 501)

        [ ] Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

        [ ] Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

      _4_   _9_   _3_   _1_

| 8. | **Under which chapter of the Bankruptcy Code is the debtor filing?** | *Check one:* |
|---|---|---|

        [ ] Chapter 7

        [ ] Chapter 9

        [X] Chapter 11. *Check **all** that apply*:

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

          [ ] The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

          [ ] The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

          [ ] A plan is being filed with this petition.

          [ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

          [ ] The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

          [ ] The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

        [ ] Chapter 12

Debtor    **Agspring Idaho, LLC** _____    Case number (*if known*) __23-__ _____
Name

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.   District _____   When _____   Case number _____
                MM / DD / YYYY

         District _____   When _____   Case number _____
                MM / DD / YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes.   Debtor   See Schedule 1 _____   Relationship _____

         District _____   When _____
                                      MM / DD / YYYY

         Case number, if known _____

---

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

     **Why does the property need immediate attention?** (*Check all that apply.*)

     ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

         What is the hazard? _____

     ☐ It needs to be physically secured or protected from the weather.

     ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

     ☐ Other _____

     **Where is the property?** _____
                                  Number       Street

                                  _____

                                  City                              State ZIP Code

     **Is the property insured?**

     ☐ No

     ☐ Yes. Insurance agency _____

            Contact name _____

            Phone _____

---

███   **Statistical and administrative information**

Debtor   **Agspring Idaho, LLC**_____   Case number (*if known*)__23-_____
        Name

| | |
|---|---|
| 13. **Debtor's estimation of available funds** | *Check one:*<br>☒ Funds will be available for distribution to unsecured creditors.<br>☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

14. **Estimated number of creditors**

| | | |
|---|---|---|
| ☒ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

15. **Estimated assets**

| | | |
|---|---|---|
| ☒ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

16. **Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☒ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

17. **Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  05/31/2023
            MM  / DD / YYYY

✘ */s/ Kyle Sturgeon*
Signature of authorized representative of debtor

Title   Chief Restructuring Officer_____

Kyle Sturgeon_____
Printed name

Debtor   **Agspring Idaho, LLC**_____      Case number (*if known*)___23-_____
          Name

**18. Signature of attorney**        ✗  */s/ Laura Davis Jones*        Date   05/31/2023
                                                                             MM/DD/ YYYY

                        Laura Davis Jones
                        Printed name
                         PACHULSKI STANG ZIEHL & JONES LLP
                        Firm name
                         919 North Market Street, 17th Floor
                        Number        Street
                         Wilmington                              DE        19801
                        City                                     State     ZIP Code

                          (302) 652-4100                         ljones@pszjlaw.com
                        Contact phone                            Email address

                         2436                                    DE
                        Bar number                               State

## Rider 1 to Voluntary Petition

On the date hereof, each of the affiliated entities listed below, including the debtor in this chapter 11 case (collectively, the "Debtors"), filed a petition in this Court for relief under chapter 11 of title 11 of the United States Code.

Agspring, LLC

Agspring Idaho 1, LLC

Agspring Idaho 2, LLC

Agspring Idaho, LLC

FO-ND, LLC dba Firebrand Artisan Mills

Agspring Logistics, LLC dba Agforce

**AGSPRING IDAHO, LLC**

**Omnibus Written Consent for Bankruptcy Petition Filing**

**May 25, 2023**

The undersigned, constituting the sole member (the "Member") with authority to vote on the matter presented herein of Agspring Idaho, LLC, a Delaware limited liability company (the "Company"), hereby consents in writing, pursuant to the laws of its jurisdictions of formation, and hereby adopts the following resolutions, effective as of the date first written above, and waives all notice requirements in connection therewith.

**WHEREAS**, the Member has considered the financial and operational aspects of the Company's business and the recommendations of the Company's professionals and advisors;

**WHEREAS**, the Member has reviewed the historical performance of the Company, the assets of the Company, the current and long-term liabilities of the Company, and the current operational status of the Company; and

**WHEREAS**, the Member has reviewed, considered, and received the recommendations of the professionals and advisors of the Company as to the terms of the proposed restructuring and liquidation to be implemented during the course of a chapter 11 case of the Company.

**WHEREAS**, the Member has authorized the Company to take the actions set forth in these resolutions.

**WHEREAS**, in the judgment of the Member, it is advisable and in the best interests of the Company to create a Chief Restructuring Officer position, appoint an individual to such Chief Restructuring Officer positions, and to delegate certain of the rights, powers, and duties of the Member Manager to manage and control the business and affairs to such Chief Restructuring Officer;

**WHEREAS**, in the judgment of the Member, it is advisable and in the best interests of the Company to retain MERU, LLC ("MERU") to provide services, including the services of a Chief Restructuring Officer, and to be compensated as described in the MERU engagement letter in substantially the form attached hereto as Exhibit A (the "MERU Engagement Letter").

**WHEREAS**, in the judgment of the Member, it is advisable and in the best interests of such Company to appoint Kyle Sturgeon, Managing Partner of MERU, as the Chief Restructuring Officer of the Company with the role and responsibilities as described in the MERU Engagement Letter.

**WHEREAS**, the Member has authorized the Company to take the actions set forth in these resolutions.

**NOW, THEREFORE**, be it resolved as follows:

**RESOLVED**, that Mr. Sturgeon is appointed as Chief Restructuring Officer of the Company, effective as of the date hereof and retains MERU to provide services and be compensated as described in the MERU Engagement Letter.

**RESOLVED**, that in the judgment of the Member, it is necessary, advisable and in the best interests of the Company, having considered the interests of creditors and other interested parties, that a voluntary petition be filed by the Company under the provisions of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

**RESOLVED FURTHER,** that the Company is authorized and empowered to engage and retain the law firm of Dentons US LLP ("<u>Dentons</u>") as restructuring and general bankruptcy counsel to the Company to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the Chapter 11 Case, and in connection therewith, the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriated retainers prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed appropriate applications for authority to retain the services of Dentons;

**RESOLVED, FURTHER,** that Mr. Sturgeon, as Chief Restructuring Officer, is authorized and empowered on the Company's behalf to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver and file any and all such instruments as they, in their discretion, may deem necessary or advisable in order to carry out the purpose and intent of the foregoing resolutions; and

**RESOLVED, FURTHER**, that the Company, Mr. Sturgeon, and such other officers or representatives as the Company or Mr. Sturgeon may designate, be, and hereby are, authorized and empowered to make requests to carry out the foregoing, as necessary, from the Term Loan Lenders (as such term is understood under the certain Term Credit Agreement dated as of December 14, 2015 among Agspring, LLC, the guarantors party thereto (including the Company), and the Lenders party thereto and U.S. Bank National Association, as the Administrative Agent (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Credit Agreement</u>") to use funds currently held by the Company which constitute cash collateral under the Credit Agreement.

**Omnibus Resolutions**

**RESOLVED, FURTHER,** that to the extent any prior resolutions of the Company purport to contradict the resolutions and actions contained herein, the resolutions of this written consent shall supersede such prior resolutions and represent the will of the Company.

**RESOLVED, FURTHER**, that the undersigned hereby ratify and confirm all actions taken by the Company and other representatives of the Company prior to the date hereof in furtherance of the foregoing resolutions.

**RESOLVED, FURTHER**, that this consent may be executed electronically (including by .pdf) in any number of counterparts, each of which shall constitute an original, but all of which

when taken together shall constitute a single consent, and shall have the force and effect of an action of the respective boards, sole members, or sole shareholders, at a duly called and held meeting of such parties.

[Signature Page Follows]

This Written Consent is effective as of the date first written above.

*On behalf of:*

**AGSPRING IDAHO, LLC;**
*By its Member*
**AGSPRING IDAHO 2, LLC;**
*By its Member*
**AGSPRING IDAHO 1, LLC;**
*By its sole Manager*

_____
Name: Bruce Chapin

As accepted and acknowledged by:

**KYLE STURGEON**
*Its Chief Restructuring Officer*

_____
Name: Kyle Sturgeon

Title: Chief Restructuring Officer

*[Signature Page to Written Consent for Petition Filing of Agspring Idaho, LLC]*

**Exhibit A: Engagement Letter**

# MERU

May 25, 2023

Agspring, LLC, *et al*
5101 College Boulevard
Leawood, Kansas 66211
Attn: Eric Knight and Gerry Tywoniuk, Board of Managers,
Bruce Chapin, Manager

Dear Sirs:

This letter, together with the attached Schedule(s) and General Terms and Conditions, confirms and sets forth the terms and conditions of the engagement between Meru, LLC ("MERU") and Agspring, LLC, and representation of its directly or indirectly owned affiliates, Agspring Idaho 1 LLC; Agspring Idaho LLC; FO-ND LLC, dba Firebrand Artisan Mills; Agspring Logistics LLC, dba Agforce and Agspring Idaho 2 LLC. (each, individually and collectively, the "Company"), including the scope of the services to be performed and the nature and basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute a binding agreement between the Company and MERU (the "Agreement").

## Description of Services

(a)   Officers.  In connection with this engagement, MERU shall make available to the Company:

    (i)        Kyle Sturgeon as the Chief Restructuring Officer (the "CRO"); and

    (ii)      Upon the mutual agreement of MERU and the Company, MERU will provide additional employees of MERU and/or its affiliates ("Additional Staff") as required (collectively, with the CRO, the "Engagement Staff"), to assist the CRO in the execution of the duties set forth more fully herein.

(b)   Duties. The Engagement Staff will provide the services listed below to the Company.

    (i)        The Engagement Staff shall lead the Company's assessment of restructuring options and strategic alternatives and provide advice and recommendations, as appropriate, to the Company in the evaluation and decisions regarding restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's assets;

    (ii)      Work with the Company's counsel to identify and evaluate the risks and mitigants associated with potential restructuring plans and strategic alternatives and provide advice and recommendations regarding the same;

# MERU

(iii)    Assist the Company in preparing contingency plans, as requested;

(iv)    If the Company elects to pursue a bankruptcy:

        (1)    Provide support to the Company, as needed, in its bankruptcy proceedings;

        (2)    Assist the Company's counsel in assembling due diligence materials and preparing necessary court filings;

        (3)    As appropriate, serve as declarants for factual information to which the Engagement Staff can adequately testify;

        (4)    Advise, assist, and/or manage, as appropriate, communications and/or negotiations with outside stakeholders, including lenders (and their advisors), customers, regulatory agencies, suppliers and employees; and

(v)    Provide other services as requested or directed by the Manager or the Board of Managers or other Company personnel as authorized and agreed to by MERU.

(c)    The Engagement Staff shall report to and operate at the request of the CRO and any officers as directed by the Company and, at the request of the Company, will make recommendations to and consult with the Company.

(d)    The Engagement Staff will be employed by MERU and, while rendering services to the Company, will continue to work with other personnel at MERU in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Staff pursuant to this Agreement. Except in the event of the Engagement Staff's gross negligence, willful misconduct or bad faith, MERU shall have no liability to the Company for any acts or omissions of the Engagement Staff related to the performance or non-performance of services at the direction of the Board of Managers or Manager and consistent with the requirements of the Engagement and this Agreement.

(e)    In connection with the services to be provided hereunder, from time to time MERU may utilize the services of independent contractors as Engagement Staff subject to the below "Staffing & Compensation" provisions.

**Staffing & Compensation**

MERU fees are based on the hours spent by MERU staff at MERU's hourly rates, which are:

| | |
|---|---|
| Partners / Managing Partners | $700 – 850 |
| Sr. Directors / Principals | $575 – 700 |

2

# M E R U

| | |
|---|---|
| Vice Presidents / Directors | $450 – 575 |
| Analysts / Associates | $300 – 450 |
| Senior Advisors | $400 – 850 |

Such rates shall be subject to adjustment annually at such time as MERU adjusts its rates generally. The Company agrees that staffing (other than the CRO) may be amended from time to time to add or delete staff. The above rates reflect MERU's hourly rates as of January 1, 2023.

In addition to payment of hourly rates, the Company shall reimburse MERU for its reasonable out-of-pocket documented expenses incurred in connection with this assignment, such as travel, lodging, duplicating, research, messenger and telephone charges.

All fees and expenses will be billed by written invoice on a weekly basis. Invoices are due upon receipt and payable within 10 business days of receipt.

The initial staffing and associated rates for this engagement are listed on Schedule 1.

**Retainer**

MERU is currently holding a retainer in the amount of $22,100 from the Company. The Company agrees that MERU may retain that amount and further that in order to commence this engagement, MERU requires an additional retainer of $125,000 prior to commencement of services. This retainer shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder. Please indicate your agreement by executing a copy of this Letter in the space provided below and returning it. A facsimile or scanned copy delivered via email are as acceptable as an original. We appreciate prompt receipt of an executed copy but will commence work based on the understandings contained in this letter prior to our receipt of your signature. Of course, please contact me if you have any questions about anything in this Letter or the Terms, or with respect to any aspect of our representation .

3

# MERU

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Meru, LLC

By: _____
Kyle Sturgeon

Its:  Managing Partner

Accepted and agreed:

**AGSPRING, LLC;**
*By its sole member Agspring Holdco, LLC*

**Board of Managers**

_____
Name: Gerry Tywoniuk

_____
Name: Eric Knight

By: _____
Bruce Chapin

Manager for  Agspring Idaho 1 LLC; Agspring Idaho LLC; FO-ND LLC, Agspring Logistics LLC, and Agspring Idaho 2 LLC

4

# MERU

## SCHEDULE 1

| Name | Title | Hourly Rate |
|---|---|---|
| Kyle Sturgeon | CRO | $850 |
| Adam Cohen | Sr. Director | $600 |

# MERU

**GENERAL TERMS & CONDITIONS**

1. Term

This Agreement will apply from the commencement of the services referred to in the Description of Services above and may be terminated with immediate effect by either party without cause by written notice to the other party. MERU normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for MERU to continue performance of the engagement, or other just cause or conflict of interest exists. On termination of the Agreement, any fees and expenses due to MERU shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination). The provisions of this Agreement that give the parties rights or obligations beyond its termination, including any indemnification obligations hereunder, shall survive and continue to bind the parties.

2. Information Provided by the Company

The Company shall use all reasonable efforts to: (i) provide MERU with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that MERU reasonably requests in connection with the services to be provided to the Company. MERU shall rely, without further independent verification, on the accuracy and completeness of all available information and information that is furnished by or on behalf of the Company and otherwise reviewed by MERU in connection with the services performed for the Company. The Company acknowledges and agrees that MERU is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. MERU is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Company to do so.

3. Forward Looking Statements

The Company understands that the services to be rendered by MERU may include the preparation of projections and other forward-looking statements, and the Company acknowledges that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, MERU will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

4. No Third-Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by MERU to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board of Managers and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without MERU's prior written approval (which shall not be unreasonably withheld), except as required by law.

5. Services by Other Third Parties.

The Company shall be solely responsible for the work and fees of any other party (other than the Engagement Staff) engaged by the Company to provide services in connection with the engagement regardless of whether such party was introduced to the Company by MERU. Except as provided in this Agreement, MERU shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, MERU acknowledges that it is not authorized under this Agreement to engage any third party to provide services or advice to the Company, other than our agents or independent contractors engaged to provide Services, without the Company's prior written consent.

6

# MERU

## 6.  Conflicts

MERU is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because MERU and its affiliates comprise a consulting firm ("Firm") that serves many clients, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people that had or have or may have relationships with the Company, including creditors of the Company.  The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained.   The MERU professionals providing services hereunder will not accept an engagement that directly conflicts with this engagement without the Company's prior written consent.

## 7.  Confidentiality

MERU shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings, provided in the event of any such legal proceedings MERU will notify the Company so that the Company may seek protection of the information; or (iii) with the consent of the Company to the extent reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

## 8.  Audit Matters

The Company acknowledges and agrees that MERU and Engagement Personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

## 9.  Non-Solicitation

The Company, on behalf of itself and its subsidiaries and affiliates and any person that may acquire all or substantially all of its assets agrees that, for a period of two years following the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of MERU or any of its affiliates who worked on this engagement while engaged by MERU or its affiliates ("Solicited Person").   Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, MERU shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 2,000 hours. The Company acknowledges and agrees that this fee fairly represents the loss that MERU will suffer if the Company breaches this provision.  The fee shall be due and payable at the time of the Solicited Person's acceptance of employment or engagement.

## 10. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend MERU and its affiliates and its and their partners, director, officers, employees, and agents (each, an "MERU Party" and collectively, the "MERU Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of MERU that is the subject of the Agreement, except in the event of MERU's gross negligence, willful misconduct or bad faith. The Company shall pay damages and reasonable expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential and material conflict of interest, the MERU Parties may engage separate counsel, acceptable to the Company, to represent them at the Company's expense.

In addition to the above indemnification, MERU employees serving as directors or officers of the Company or affiliates will receive the benefit of the most favorable indemnification provisions provided by the Company to its directors, officers and any equivalently placed employees, whether

# MERU

under the Company's charter or by-laws, by contract, law or otherwise.

The Company shall specifically include and cover employees and agents serving as directors or officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees ("D&O Insurance"). Prior to MERU accepting any officer position, the Company shall, at the request of MERU, provide MERU a copy of its current D&O policy, a certificate(s) of insurance evidencing the policy is in full force and effect, and a copy of the signed Member and/or Board resolutions and any other documents as MERU may reasonably request evidencing the appointment and coverage of the indemnitees. The Company will maintain such D&O Insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O Insurance coverage with respect to such persons. If the Company is unable to include MERU employees and its agents under the Company's policy or does not have first dollar coverage acceptable to MERU in effect for at least $10 million (e.g., there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), MERU may, at its option, attempt to purchase a separate D&O Insurance policy that will cover MERU employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. If MERU is unable or unwilling to purchase such D&O Insurance, then MERU reserves the right to terminate the Agreement.

The Company's indemnification obligations in this section shall be primary to, and without allocation against, any similar indemnification obligations that MERU may offer to its personnel generally, and the Company's D&O Insurance coverage for the indemnitees shall be specifically primary to, and without allocation against, any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by MERU or otherwise).

MERU is not responsible for any third-party products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against MERU, whether or not MERU is instrumental in procuring such third-party product or service.

MERU acknowledges that, during the pendency of any Bankruptcy Court approved retention, these indemnification provisions are subject to modification as may be stated within the Bankruptcy Court's retention order.

11. Limit of Liability

THE MERU PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS AGAINST OR ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF MERU. THE MERU PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE MERU PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAYABLE TO MERU FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the MERU Parties' aggregate liability for all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by MERU pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the MERU Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the MERU Parties pursuant to this Agreement exceed the Liability Cap.

12. Miscellaneous

# MERU

This Agreement shall be construed in accordance with and governed by the laws of the State of Georgia without giving effect to any choice or conflict of law provision or rule. This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof. This Agreement supersedes all prior or contemporaneous agreements, arrangements, conditions, negotiations and understandings between the parties relating to the subject matter hereof. No waiver of any term, provision or condition of this Agreement shall be deemed to be, or shall be or shall constitute, a waiver of any other term, provision or condition herein, whether or not similar. No such waiver shall be binding unless in writing and signed by the waiving party. No supplement, modification or amendment of any term, provision or condition of this Agreement shall be binding or enforceable unless evidenced in writing executed by the parties hereto. If any provision of this Agreement is declared invalid by any tribunal, then such provision shall be deemed automatically adjusted to the minimum extent necessary to conform to the requirements for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Agreement as though originally included herein. In the event the provision invalidated is of such a nature that it cannot be so adjusted, the provision shall be deemed deleted from this Agreement as though such provision had never been included herein. In either case, the remaining provisions of this Agreement shall remain in effect. This Agreement may be executed in counterparts, each of which shall be deemed an original and which together shall constitute one and the same instrument. MERU AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

This Agreement shall be binding upon MERU and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of MERU's or the Company's respective businesses and/or assets. This Agreement may not be amended or modified except in writing executed by the Company and MERU. Notwithstanding anything herein to the contrary, MERU may reference or list the Company's name and/or logo and/or a general description of the services in MERU's marketing materials, including, without limitation, on MERU's website.

| Fill in this information to identify the case: |
| --- |

Debtor name   Agspring Idaho, LLC

United States Bankruptcy Court for the: _____ District of   Delaware
(State)

Case number (If known):   23-_____

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Consolidated Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders                    12/15

A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1. **LVS II SPE XVIII LLC HVS V LLC** U.S. Bank National Association 214 N. Tryon Street 27th Floor Charlotte, NC 28202 | Attn: James Hanley, CDO Trust Services Email: agency.services@usbank.com james.hanley1@usbank.com | Secured Debt | Unliquidated | | TBD | $74,033,912.39 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AGSPRING LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23 - _____ ( )<br><br>(Joint Administration Requested) |

**COMBINED CORPORATE OWNERSHIP STATEMENT**
**AND LIST OF EQUITY SECURITY HOLDERS PURSUANT TO**
**FED. R. BANKR. P. 1007(a)(1), 1007(a)(3), and 7007.1**

Pursuant to Rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy Procedure, Agspring, LLC and certain of its affiliates, who are or may be debtors and debtors in possession in the above-captioned cases (each a "Debtor" and collectively, the "Debtors"), hereby state as follows:

1. Debtor Agspring, LLC is 100% owned by non-debtor Agspring Holdco, LLC, its sole member.

2. Debtor Agspring, LLC is the Sole Member of Debtor Agspring Idaho 1, LLC.

3. Debtor Agspring Idaho 1, LLC is the Sole Member of Debtor Agspring Idaho 2, LLC.

4. Debtor Agspring 2 Idaho, LLC is the Sole Member of Debtor Agspring Idaho, LLC.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Agspring, LLC (<u>7735</u>); Agspring Idaho 1, LLC (<u>1720</u>); Agspring Idaho 2, LLC (<u>9262</u>); Agspring Idaho, LLC (<u>8754</u>); FO-ND, LLC dba Firebrand Artisan Mills (<u>1520</u>) and Agspring Logistics, LLC, dba Agforce (<u>6067</u>). The Debtors' mailing address is 5101 College Boulevard, Leawood KS, 66211.

5.  Debtor Agspring, LLC is a Sole Member of Debtor FO-ND, LLC dba Firebird Artisan Mills, LLC.

6.  Debtor Agspring, LLC is the Sole Member of Debtor Agspring Logistics, LLC dba Agforce.

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case and this filing:</strong></td></tr>
<tr><td>Debtor Name</td><td>Agspring Idaho, LLC</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>_____ District of Delaware<br>(State)</td></tr>
<tr><td>Case number (If known):</td><td>23-_____</td></tr>
</table>

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* ____

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration Combined Corporate Ownership Statement and List Equity Security Holders, Certification of Creditor Matrix _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  05/31/2023                    ✖ /s/ Kyle Sturgeon
       MM / DD / YYYY                    Signature of individual signing on behalf of debtor

                           Kyle Sturgeon
                           Printed name

                           Chief Restructuring Officer
                           Position or relationship to debtor

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AGSPRING IDAHO, LLC, | Case No. 23- _____ (___) |
| Debtor. | (Joint Administration Requested) |

## CERTIFICATION OF CREDITOR MATRIX

Pursuant to Rule 1007-2 and on behalf of the above-captioned Debtor, I hereby certify that the Creditor Matrix submitted herewith contains the names and addresses of the Debtor's creditors. To the best of the Debtor's knowledge, the Creditor Matrix is complete, correct, and consistent with the Debtor's books and records.

The information contained herein is based upon a review of the Debtor's books and records as of the petition date. However, no comprehensive legal and/or factual investigations with regard to possible defenses to any claims set forth in the Creditor Matrix have been completed. Therefore, the listing does not, and should not, be deemed to constitute: (1) a waiver of any defense to any listed claims; (2) an acknowledgement of the allowability of any listed claims; and/or (3) a waiver of any other right or legal position of the Debtor.

AIM c/o The American
Infrastructure MLP Fund II, L.P.
Attn: Brian Barlow/Matt Garibaldi
950 Tower Lane, Suite 800
Foster City, California 94404

AIM c/o Latham & Watkins LLP
Attn: William N. Finnegan IV
811 Main Street
Suite 3700
Houston, Texas 77002

Bank of America
NC1-030-22-02
Bank of America Tower
620 S. Tyron
Charlotte, NC  28255

Boan, Connealy & Houlehan LLC
Attn: Melissa Stephens, CPA
13220 Metcalf Ave
Suite 100
Overland Park, KS  66213

Bradley K. Clark
Address Redacted

Bryan Cave LLP
Attn: James P. Pryde
One Kansas City Place
1200 Main Street, Suite 3800
Kansas City, Missouri 64105

Chris Stratton
Address Redacted

ConvergeOne, Inc.
5940 Golden Hills Dr.
Minneapolis, MN  55416

Delaware State Treasury
820 Silver Lake Blvd.
Suite 100
Dover, DE 19904

Dustin Clevenger
Address Redacted

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

MERU, LLC
Attn: Kyle Sturgeon
1372 Peachtree Street, N.E.
Atlanta, GA 30309

Randal Linville
Address Redacted

Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004

Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 898
Dover, DE 1990

Securities & Exchange Commission
100 F Street, NE
Washington, DC 20549

Securities and Exchange Commission
Attn: Andrew Calamari, Regional
Director New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281-1022

US_ACTIVE\123777943\V-1

Tim Lefman
Address Redacted

UMB Bank, N.A.
1010 Grand Blvd.
Kansas City, MO  64106

US Bank
800 Nicollet Mall
Minneapolis, MN  55402

LVS II SPE XVIII LLC, HVS V LLC,
TOBI XXI, LLC
U.S. Bank National Association
214 N. Tryon Street
27th  Floor
Charlotte, NC 28202

Wells Fargo Vendor Financial
1010 Thomas Edison BLVD SW
Cedar Rapids, IA  52404